**UNITED STATES DISTRICT COURT**
District of New Jersey

<table>
<tr>
<td>
CHAMBERS OF<br>
**JOSE L. LINARES**<br>
JUDGE
</td>
<td align="right">
MARTIN LUTHER KING JR.<br>
FEDERAL BUILDING & U.S. COURTHOUSE<br>
50 WALNUT ST., ROOM 5054<br>
P.O. Box 999<br>
Newark, NJ 07101-0999<br>
973-645-6042
</td>
</tr>
</table>

**NOT FOR PUBLICATION**

**LETTER-OPINION AND ORDER**

September 7, 2006

**VIA ELECTRONIC FILING**
Andrew Dwyer, Esq.
Dwyer & Dunnigan, LLC
17 Academy Street
Suite 1010
Newark, NJ 07102

Joseph J. Vitale, Esq.
Cohen, Weiss and Simon
94 Valley Road
Montclair, NJ 07042

      Re:    **Dawes v. Local 375, Civil Service Technical Guild, et al.**
               **Civil Action No.: 04-4002 (JLL)**

Dear Counsel:

Presently before this Court is Defendants' Local 375, Civil Service Technical Guild ("Local 375"), District Council 37 ("DC 37"), and American Federation of State, County and Municipal Employees, AFL-CIO ("AFSCME") (collectively "Defendants") motion for summary judgment, and Plaintiff Thomas K. Dawes' ("Plaintiff") motion for summary judgment pursuant to Fed. R. Civ. P. 56(c), in this matter. The Court has considered the papers submitted by the parties. The Court decides this motion without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, this Court concludes that Defendants'

motion for summary judgment is DENIED in part and GRANTED in part, and Plaintiff's motion for summary judgment is DENIED.

## BACKGROUND FACTS

Plaintiff is a former employee of Local 375, a labor organization that is a chartered, subordinate body of the multi-state labor organization, the AFSCME. The DC 37 is an affiliate of both the AFSCME and Local 375, providing both organizations with various services and benefits. Plaintiff became a member of AFSCME and Local 375's labor unions after being hired by Local 375. Local 375 suspended Plaintiff on two occasions and ultimately terminated Plaintiff's employment. Plaintiff alleges that Defendants' actions were not in accord with the procedural guarantees required under Local 375 and AFSCME's Constitutions. As the facts of this case have already been set out in the parties papers and the Final Pretrial Order ("FPTO"), they need not be reiterated in full for purposes of the present motion. The relevant material facts, however, will be discussed below and in more length in the legal discussion.

The primary issues before this Court are whether any questions of material fact exist as to the following questions: whether the protections of the Local 375 and AFSCME's Constitutions extend to Local 375 employees; whether "charges," as the term is used by these Constitutions, were brought against Plaintiff in the process of his termination; and finally, whether AFSCME and DC 37 were responsible for Plaintiff's termination.

**A.     Undisputed Material Facts**

The following facts are undisputed. Local 375 is a labor organization that is a chartered, subordinate body of the multi-state labor organization, AFSCME. (Pl's 56.1 Stmt. ¶¶ 1-2; Def's 56.1 Stmt. ¶¶ 1-2; FPTO Stipulated Facts ¶ 3). DC 37 is an affiliate of both AFSCME and Local 375 and

provides both organizations with services and benefits. (Pl's 56.1 Stmt. ¶ 3; Def's 56.1 Stmt. ¶¶ 1-2; FPTO Stipulated Facts ¶ 4). Plaintiff received Local 375 and AFSCME's Constitutions during his employment with Local 375. (Pl's 56.1 Stmt. ¶¶ 7, 13; Def's 56.1 Stmt. ¶ 9). Once employed by Local 375, Plaintiff became a member of both Local 375 and AFSCME. (Pl's 56.1 Stmt. ¶ 11; Defendants' Stat. Of Material Facts ¶ 4; FPTO Stipulated Facts ¶ 9).

Members of Local 375 and AFSCME are entitled to the rights granted pursuant to the AFSCME "Bill of Rights of Union Membership," including free speech to members, the right to conduct internal affairs of the organization, the right to full participation in the decision-making processes of the union, and the right to due process when charges are brought against a member. (Pl's 56.1 Stmt. ¶ 11; Def's 56.1 Stmt. ¶4; FPTO Stipulated Facts ¶ 12 ). Although the provisions of the AFSCME "Bill of Rights of Union Membership" are not explicitly provided for in the Local 375 Constitution, the AFSCME Constitution requires that the "constitution of every subordinate body. . . shall conform to the provisions of the AFSCME Constitution including the provisions of the Bill of Rights." (Plaintiff's Stat of Material Facts ¶¶ 18-19, 21; FPTO Stipulated Facts ¶¶ 14-15). The Local 375 Constitution contains provisions indicating its adherence to this mandate. (Pl's 56.1 Stmt. ¶¶ 18-19, 21).

Local 375 and AFSCME's Constitutions extend specific rights to members against whom "charges" are brought. (Pl's 56.1 Stmt. ¶¶ 18-19, 21, 23-24; FPTO Stipulated Facts ¶ ¶ 12, 16-23). Article X, Section 6, of the AFSCME Constitution states:

> Charges shall be in writing and shall be signed by the member or members bringing the charges. The charges shall be specific, citing in detail the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific section shall be cited, along with the specific act or failure to act which constitutes the alleged violation.

The AFSCME Constitution also provides that a judicial panel will hear charges brought against any

member. (Pl's 56.1 Stmt. 18-19, 21). Similarly, Local 375's Constitution provides a judicial process for charged members, including the right to be provided with a copy of the charges and notice to appear for a trial to hear the charges. (Pl's 56.1 Stmt. ¶¶ 23-34; FPTO Stipulated Facts ¶17). Both the Local 375 Constitution and Article X of the AFSCME Constitution extend to the charged specific member rights, including, the right to file a written answer to the charges, the right to a trial within sixty days after being served with the charges, the right to have at least fifteen days advance notice of the date, time and place of the trial, the right to confront the accusers, the right to present witnesses, the right to be presumed innocent, and the right to appeal. (Pl's 56.1 Stmt. ¶¶ 23-24; FPTO Stipulated Facts ¶ 19).

Plaintiff was suspended, or, more specifically, put on involuntary sick leave, for the period of January 7, 1998 through approximately January 22, 1998. (Pl's 56.1 Stmt. ¶ 37; Def's 56.1 Stmt. ¶ 22; FPTO Stipulated Facts ¶24). Plaintiff received a letter informing him of this suspension, and further assuring Plaintiff that the motivation for his suspension was "only to confirm that [he is] able to perform the functions of [his] job." (Decl. of Thomas Dawes, Exhibit D). Plaintiff was not given notice of any charges against him under Article X of the AFSCME Constitution, nor was a trial conducted under that provision. (FPTO Stipulated Facts ¶ 24).

Roughly three months later, on March 19, 1998, the then-current President of Local 375, Lou Albano, suspended Plaintiff without pay for "disruptive public behavior in the Local 375 office on March 19, 1998 at approximately 3:30 p.m." (Decl. of Thomas Dawes, Exhibit E; FPTO Stipulated Facts ¶ 25). On April 9, 1998, Plaintiff's suspension was rescinded. (Pl's 56.1 Stmt. ¶ 40; Def's 56.1 Stmt. ¶ 24; FPTO Stipulated Facts ¶ 26).

Several months later, on October 5, 1998, Mel Levy ("Levy"), a member of the Local 375 Executive Committee, delivered a memo to the Local 375 Executive Committee outlining Plaintiff's

alleged transgressions and urging disciplinary measures and possible termination.  (Pl's 56.1 Stmt. ¶ 39; Defendants' Response to Pl's 56.1 Stmt. ¶ 13).  The memo alleges that Plaintiff circulated memos accusing M. Keller of participating in a vote fraud scheme; stating that Mark Shapiro was the most likely perpetrator of organizing the December 1997 theft of election materials; and accusing Mike Gimbel of carrying out the political activities of Workers World Party in Local 375 offices and on union time, with the full support of elected officers of Local 375.  (Decl. of Thomas Dawes, Exhibit G).  The October 5 memo also alleges that Plaintiff made a "veiled threat" against M. Keller in writing stating:  "I never lost an internal Union political battle in my life.  If you want to attack me and define me as an enemy, Look Out Honey."  (Id.).  Finally the October 5 memo accuses Plaintiff of discussing Local 375 and its activities with a reporter from the *New York Times*.  (Id.).

The October 5 memo recommends that Plaintiff be required to prove the allegations, to apologize to M. Keller and the Executive Committee and to cease violating Article XIV, Section 7 of the Local 375 Constitution, which Plaintiff allegedly violated in discussing the Union and its activities with the *New York Times* reporter.  (Id.).  The Memo further recommends that Plaintiff be dismissed if he can not or will not comply with any of these requirements.  (Id.).

The Local 375 Executive Committee convened on October 7, 1998 to consider this matter, and a request was made to fire Plaintiff immediately.  (Pl's 56.1 Stmt. ¶ 47; Def's 56.1 Stmt. ¶ 25; FPTO Stipulated Facts ¶ 27).  Plaintiff was permitted to speak at this meeting and requested a hearing regarding the issues presented.  (Pl's 56.1 Stmt. ¶ 47; Def's 56.1 Stmt. ¶ 25).  After Plaintiff made this request, the motion to dismiss Plaintiff immediately was denied, and instead, the Executive Committee suspended Plaintiff for thirty days.  (Pl's 56.1 Stmt. ¶ 47; Def's 56.1 Stmt. ¶ 25; FPTO Stipulated Facts ¶ 27).  The following day, October 8, Plaintiff received a letter informing him of this suspension.  (FPTO Stipulated Facts ¶ 27).

The Executive Committee convened again on November 4, 1998, less than thirty days after Plaintiff's last suspension, and made the decision to fire Plaintiff, effective November 6, 1998. (Pl's 56.1 Stmt. ¶¶ 60-61; Defendants' Response to Pl's 56.1 Stmt. ¶ 8; Def's 56.1 Stmt. ¶ 26; FPTO Stipulated Facts ¶¶ 28-29). Plaintiff was not given any written notice of the allegations against him, nor was he given notice of or permission to attend the meeting. (FPTO Stipulated Facts ¶ 28). In a letter dated November 5, 1998, Plaintiff was informed of the Executive Committee's decision to terminate him for cause, effective November 6, 1998. (FPTO Stipulated Facts ¶ 30). The letter provided no explanation for Plaintiff's termination. (FPTO Stipulated Facts ¶ 30).

**B.     Disputed Material Facts**

The disputed facts surround two main issues in contention; first, who was responsible for the Plaintiff's termination, and second, whether the AFSCME and Local 375 Constitutions and the protections provided therein extend to the actions taken against Plaintiff.

Plaintiff contends that both DC 37 and AFSCME were involved and responsible for Plaintiff's termination. (Pl's Response to Def's 56.1 Stmt. p. 33). First, Plaintiff contends that at the time that he was hired as a full-time employee of Local 375, he also became an employee of DC 37 and AFSCME. (Pl's 56.1 Stmt ¶ 5.; Def's Response to Pl's 56.1 Stmt. ¶ 1; Def's 56.1 Stmt. ¶¶ 4-6). Defendants point out that Plaintiff was never interviewed by AFSCME and that Plaintiff's claim that he was employed by AFSCME is based only on the fact that AFSCME and Local 375 are associated. Defendants similarly argue that Plaintiff contends he was an employee of DC 37 because he was interviewed by Local 375's President Lou Albano, who at that time was also Vice President of DC 37. By contrast, Plaintiff responds that Plaintiff was told by Brad Smith ("Smith"), an employee of DC 37, that he was being paid by DC 37. Further, Plaintiff notes that he was issued a DC 37 identification card, and that in December Smith told Plaintiff that Stanley Hill of DC 37

would have him fired. (Pl's Response to Def's 56.1 Stmt. ¶ 6). Plaintiff further contends that DC 37 was involved in processing Plaintiff's involuntary sick leave in 1998. (Pl's Response to Def's 56.1 Stmt. ¶ 6).

Plaintiff contends that while he was an employee of Local 375, he engaged in activities specifically protected by the Bill of Rights of Union Membership and that these activities ultimately resulted in Plaintiff's discharge on November 6, 2006. (Plaintiff's Stat of Material Facts ¶¶ 30-36, 44; Defendant's Response to Pl's 56.1 Stmt. ¶ 8, 14). The October 5 memo describes the alleged activities for which Plaintiff was suspended. Plaintiff characterizes the content of the October 5 Memo as "charges" against him, as the term is used by the Local 375 and AFSCME Constitutions. (Pl's 56.1 Stmt. ¶ 38; Defendants' Response to Pl's 56.1 Stmt. ¶ 10).

Plaintiff alleges that the Local 375 Executive Committee acknowledged that their actions were to be governed by the provisions of the Constitutions when they agreed to recognize Plaintiff's due process rights with regard to his termination at the October 7 meeting. (Pl's 56.1 Stmt. ¶ 48; Defendants' Response to Pl's 56.1 Stmt. ¶ 18). Plaintiff further claims that the Executive Committee agreed at that meeting that its actions were under the auspices of the AFSCME and Local 375 Constitutions. (Pl's 56.1 Stmt. ¶ 48; Defendants' Response to Pl's 56.1 Stmt. ¶ 18). Plaintiff contends that Defendants' representatives and the Acting President of Local 375 all agreed that Plaintiff was entitled to a hearing on his termination. (Pl's 56.1 Stmt. ¶ 66-68; Defendants' Response to Pl's 56.1 Stmt. ¶ 31-33). Plaintiff also claims to have given Defendants written notice of his request for an appeal to his termination. (Pl's 56.1 Stmt. ¶ 65; Defendant's Response to Pl's 56.1 Stmt. ¶ 30). In sum, Plaintiff contends that Defendants' breached their contract with Plaintiff by failing to follow the provisions of the Constitutions in bringing charges against and ultimately terminating Plaintiff. (Pl's 56.1 Stmt. ¶ 69; Defendants' Response to Pl's 56.1 Stmt. ¶ 34).

By contrast, Susan Silverman ("Silverman"), a member of Local 375 and a member of its Executive Committee for about 22 years, testified that Roy Commer ("Commer"), the then-current President of Local 375 and Executive Committee member, was the only Executive Committee member to even reference the AFSCME Constitution and that his actions in that regard were unilateral in that they were done without the board's consent. (Decl. Of Susan Silverman ¶ 13). Commer's actions were also taken two days after the October 7 meeting. (Id. ¶ 12). Silverman further declared that to her knowledge the October 9 letter by Commer was "the first time during consideration of Dawes' staff employment that the AFSCME International Constitution had been invoked." (Id. ¶ 13). According to Silverman, the Executive Committee never considered Article X judicial procedures or Article IX, Section 43 when suspending Plaintiff at the October 7 meeting. (Id.). She further emphasized that it is "clear that the Executive Board did not suspend Dawes under Article IX, Section 43, because we directed the president to form a committee to investigate at the local level, which would have been superfluous and duplicative if we had contemplated that it would be conducted by a representative of the International President." (Id.). "Commer's letter thus gave AFSCME the erroneous impression that Dawes had been suspended under Article IX, Section 43." (Id. ¶ 14).

## LEGAL STANDARDS

A.     **Summary Judgment**

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The moving party bears the initial burden of identifying evidence that demonstrates the absence of a genuine issue of material fact. Once the moving party has met its burden, it is

incumbent upon the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Thus, if the non-movant's evidence on any essential element of the claims asserted is merely "colorable" or is "not significantly probative," the court should enter summary judgment in favor of the moving party. Anderson, 477 U.S. at 249-50. In other words, the non-moving party must "'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Serbin v. Bora Corp., 96 F.3d 66, 69 n.2 (3d Cir. 1996) (quoting Celotex Corp., 477 U.S. at 322). Further, in determining whether there remain any actual issues of factual dispute, the court must resolve all reasonable doubts in favor of the nonmoving party. Matsushita, 475 U.S. 574; Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. The Supreme Court has held that there is "no genuine issue as to any material fact," where there is a "complete failure of proof concerning an essential element of the nonmoving party's case" because all other facts are rendered immaterial. Celotex Corp., 477 U.S. at 323. Therefore, the "moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

B.   **Interpretation of Union Constitutions**

The federal courts have jurisdiction over suits by and against labor organizations, pursuant to Section 301(a) of the Labor Management Relations Act. See 29 U.S.C. § 185. In granting jurisdiction to the federal courts, the Supreme Court interprets the statute as making "substantive principles of federal labor law . . . paramount" to state law claims and dispositive in Section 301 claims. Local 174, IBT v. Lucas Flour Co., 369 U.S. 95, 103 (1962).

The Supreme Court has also held that "a union constitution is a 'contract' within the plain meaning of § 301(a) . . . ." See United Ass'n of Journeymen & Apprentices of the Plumbing and Pipefitting Indus. of the United States & Can. v. Local 334, ("Journeymen"), 452 U.S. 615, 622 (1981). Accordingly, the Court has established that suits against a union for violation of a constitution are subject to the jurisdiction of the federal courts under Section 301(a). See Lewis v. Int'l Bd. Of Teamsters, Local Union No. 771, 826 F. 2d 1310, 1312 (3d Cir. 1987).

Even as the federal courts have jurisdiction over claims asserting a violation of a union constitution, the courts are deferential to the union's own interpretation of its constitution: "courts typically defer to a union's interpretation of its own Constitution and will not override that interpretation unless it is 'patently unreasonable.'" Exec. Bd., Local 234 v. Transp. Workers Union of Am., 338 F. 3d 166, 170 (3d Cir. 2003). Only if a union's interpretation of its constitution is patently unreasonable should the court decide, as a matter of law, the correct interpretation of the union's constitution. See Journeymen, 452 U.S. 615.

## DISCUSSION

There are three issues before this Court with respect to these summary judgment motions. Plaintiff brings a breach of contract claim based on the alleged job security provisions set forth in

the Local 375 and AFSCME Constitutions. In determining whether summary judgment is appropriate on this claim, this Court must determine as a matter of law whether the Local 375 and AFSCME Constitutions extend to members acting, as Plaintiff was, in the capacity of a union employee. Second, the Court must determine if issues of material fact exist as to whether "charges," as defined by the AFSCME Constitution, were brought against Plaintiff, thus triggering the procedural requirements and protections provided by the Constitutions. Finally, the Court must determine if any issues of material fact exist as to whether AFSCME and DC 37 are responsible for Plaintiff's termination. Each of these issues will be addressed in turn.

### A.     Whether the Protections of the Constitutions Apply to Employee Members

Plaintiff brings a breach of contract claim based upon the AFSCME and Local 375 procedural protections. The question before the Court is whether these protections extend to a union employee, that is also a union member, who is disciplined and then terminated. As discussed above, the proper standard of review for a federal court's interpretation of a union constitution requires that the court defer to the union's own interpretation, unless that interpretation is "patently unreasonable." Exec. Bd., Local 234, 338 F. 3d at 170.

Plaintiff seeks summary judgment on his breach of contract claim based on the job security provisions provided in the union Constitution. He asserts that precedent demonstrates that the union Constitution was a binding contract with union employees. Woolley v. Hoffman-La Roche, Inc., held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual . . . may be enforceable against an employer." 491 A.2d 1258, modified, 499 A.2d 515 (N.J. 1985). Plaintiff further argues that Woolley and its progeny emphasize that the way in which an employment manual or statement regarding job security was distributed can give rise to contractual obligation. It is undisputed that Local 375 widely distributed the union's Constitutions and that the

Constitutions contain procedural protections that are even more definitive and well-established than those considered in the Woolley case. However, Defendants distinguish Woolley by emphasizing that the case deals specifically with employment manuals and handbooks governing employee relations, whereas the AFSCME and Local 375 Constitutions govern internal union activities. Defendants also argue that neither the plain text nor any previous interpretations of the Constitution mandate that its protections be extended to employees of the union. Defendants argue, therefore, that Woolley is inapposite to the instant matter.

While Woolley does support Plaintiff's proposition that certain materials other than employment manuals may give rise to contractual obligation where the employer's actions support an employee's reliance, Plaintiff has not, for the purposes of these motions, established that Local 375's actions rose to that level. The Court agrees with Defendants' analysis of Woolley, and finds that the Constitutions are not comparable to an employment manual or contract, particularly in light of the following discussion.

There is no dispute that Plaintiff was a union member or that the union Constitution created a binding contract with respect to procedural rights for union members. Defendants argue, however, that the Constitutions do not mandate that employees must be disciplined and terminated in accordance with procedures that were established to provide procedural protections to union members that are subject to discipline for internal union activities.

Since "courts typically defer to a union's interpretation of its own Constitution and will not override that interpretation unless it is 'patently unreasonable,'" Exec. Bd., Local 234, 338 F. 3d at 170, the burden is on Plaintiff to demonstrate that the union's interpretation of its Constitution is patently unreasonable as a matter of law, id. at 169-70. Only if a union's interpretation of its Constitution is patently unreasonable should the court decide, as a matter of law, the correct

interpretation of the union's Constitution.  See Journeymen, 452 U.S. 615.

Here, both Plaintiff and Defendants support their conflicting interpretations with testimony from Local 375 Executive Committee members.  Plaintiff relies on former Local 375 President and Executive Committee member Commer's statement that he believed that Defendants' actions were subject to the provisions of the Constitution.  To the contrary, Defendants note that Silverman, an Executive Committee member, provided a declaration stating that Commer is unable to unilaterally set forth an interpretation of the Constitution and that no other Executive Committee member believed they were acting under the auspices of the Constitution when Plaintiff was suspended and terminated.  In addition, Defendant's have provided a declaration from Larry P. Weinberg, Esq. Weinberg has been General Counsel to the AFSCME for over fifteen years and has served as counsel to AFSCME for more than thirty years.  Weinberg's declaration states the following in relevant part:

> 2.      AFSCME does not, and has never, interpreted the International Constitution, in whole or in part, as creating employment rights for staff employees of the International or its subordinate bodies.
>
> 3.      It is, and always has been, the International's view that nothing in the International Constitution limits the basis upon which a staff employee of the International Union or a subordinate body may be suspended, terminated or otherwise disciplined for employment related conduct, even if that staff employee is a member.
>
> 4.      It is, and always has been, the International's view that nothing in the International Constitution requires charges to be filed against a staff employee before a subordinate body acts as an employer to suspend, terminate or otherwise discipline the employee, even if that staff employee is a member, and even if the disciplinary action is based on conduct that would have been a chargeable offense under Article X, Section 2 of the International Constitution if charges had been filed against the employee by a member.
>
> 5.      It is, and always has been, the International's view that Article X, Section 1 of the International Constitution permits a member to file charges against someone for actions taken while a staff employee of the International Union or a subordinate body.  If charges are filed against a staff employee by a member pursuant to Article X, Section 2, such staff employee is afforded the right to have a hearing and a review of any discipline imposed in accordance with the procedures set forth in Article X of the International Constitution.

> 6. It is, and always has been the International's view that disciplinary action initiated and taken by the employing authority of the International Union or a subordinate body against an employee of such entity is not subject to Article X of the International Constitution unless the employing authority chooses to take such action pursuant to that procedure.
>
> 7. It is, and always has been, the International's view that the "Bill of Rights for Union Members" of the Preamble of the International Constitution, as its title suggests, sets forth rights enjoyed by members, not rights enjoyed by staff employees of the International or its subordinate bodies. For instance, under the Bill of Rights, "Members shall suffer no impairment of freedom of speech." It is, and always has been, the International's view that this right of free speech does not protect a staff employee from suspension, termination or other discipline based on his or her speech, even if that staff employee happens to be a member.

(Weinberg Decl. ¶¶ 2-7).

In addition, to the extent that Plaintiff also asserts a claim under the Local 375 Constitution, separate from a claim under the AFSCME Constitution, Defendants argue that Plaintiff's claim under the Local's Constitution is entirely dependent on the interpretation of the AFSCME's Constitution. The Local 375 Constitution does not contain it's own Bill of Rights, and its "Judicial Procedures" set forth in Article XVII, Section 1, provide "All judicial procedures shall be conducted in accordance with Article X of the International Constitution . . . ." The Court agrees.

The only evidence set forth by Plaintiff of the union's interpretations of the Constitution is contained in Commer's declaration. Commer declared in relevant part:

> 11. The suspension of Mr. Dawes by the Executive Board was made pursuant to Article 9, Section 43, of the International Constitution of the American Federa[tion] of State, County and Municipal Employees (AFSCME). A true and correct copy of the relevant portions of Article 9, Section 43, of the AFSCME Constitution are attached to this Declaration as Exhibit D. This is the Constitution provision that allows a subordinate body of AFSCME (such as Local 375) to suspend a staff employee. However, as stated in Article 9, Section 43, such a suspension can only last 30 days. Further, under Article 9, Section 43, the local must notify AFSCME, which is then supposed to conduct an investigation of the suspension. A 30 day suspension under Article 9, Section 43, does not abrogate the member's due process rights under the Constitution, regarding any charges brought against the member.
> * * *
> 21. Based on my involvement in the events at the time, there is no question in my

>mind that Mr. Dawes was suspended, and then fired, based on the charges that were presented against him at the October 7, 1998 Executive Board meeting. The only basis for those actions was under the AFSCME Constitution, which sets out specific procedures for how charges against a member should be handled.

(Commer Decl. ¶¶ 11, 21).

Commer's assertion that the Executive Board was acting under the auspices of the AFSCME Constitution, and that the only basis for his suspension and termination could have been pursuant to the Constitution, is insufficient "to demonstrate that the union's interpretation of its constitution is patently unreasonable as a matter of law." Exec. Bd., Local 234, 338 F. 3d at 169-70. Furthermore, AFSCME has provided a reasonable interpretation of its Constitution as providing only procedural and substantive rights to members being brought up on charges, thus meeting the applicable standard for deference to that interpretation by the court. Since the union's interpretation of its Constitution is not patently unreasonable it is unnecessary for this court decide, as a matter of law, the correct interpretation of the union's Constitution. See Journeymen, 452 U.S. 615.

### B.    Whether "Charges" Were Brought Against Plaintiff

Although employee disciplinary actions do not have to follow the union's constitutional procedures, if charges are brought in accordance with the Constitution, then it is undisputed that the procedural protections apply. Defendants concede that Plaintiff was fired without any of the procedures described in the AFSCME Constitution. Therefore, the issue remaining to be decided is whether charges were brought against Plaintiff pursuant to the AFSCME Constitution.

Plaintiff contends that Local 375 brought "charges,"[1] as that term is defined in the

---

[1] According to Article X, Section 2 of the AFSCME Constitution, only certain actions can be the basis for filing charges. The charge that would appear to be relevant to this case is "acting in collusion with management to the detriment of the welfare of the union or its management". The manner in which charges are brought must comply with strict guidelines. Article X, Section 6 of the Constitution requires that "charges shall be in writing and shall be signed by the member

AFSCME Constitution, against him on several occasions: prior to his involuntary sick leave in January, his disciplinary suspension in March, his disciplinary suspension in October, and his termination in November. Whether charges were brought against Plaintiff will determine whether Plaintiff was due the procedural guarantees of the Constitution.

Turning first to the alleged charges in January and March when Plaintiff was suspended, the Court finds that Plaintiff has not presented any evidence to support the claim that these were charges. Commer's declaration is silent on this issue and Plaintiff even says that he was not given any notice of the charges. (Dawes Decl. ¶¶ 40-41). Therefore, since Plaintiff cannot offer evidentiary support for these allegations, and given this Court's decision that unless charges are brought Plaintiff is not entitled to the procedural protections set forth in the Constitution, the Court grants Defendants' motion for summary judgment as to any claims arising from the January and March suspensions.

As for alleged charges implementing his suspension in October and his termination in November, Plaintiff argues that the October 5 memo from Levy to the Executive Committee outlining allegations and recommending disciplinary actions against Plaintiff were written charges against Plaintiff. Plaintiff argues that the events surrounding his termination confirm that the memo constituted charges being brought against him. He asserts that these charges concerned activities he engaged in that are protected by the union's Bill of Rights, e.g., engaging in free speech activities about operations of the union, complaints that the right to fair and democratic elections had been impaired, and complaints about threats of retaliation for engaging in activities protected by the Bill

---

or members bringing the charges. The charges shall be specific, citing in detail the nature, the date, and the circumstances of the alleged offense and, where a violation of a constitutional provision is alleged, the specific section shall be cited, along with the specific act or failure to act which constitutes the alleged violation." (Dawes Decl. Ex. A, p. 100-02).

of Rights.

Plaintiff also relies on the fact that an AFSCME investigator did investigate the facts surrounding his suspension. Thus, he argues that this evidences that charges were brought because an investigation of termination is explicitly provided for by the Constitution when charges are brought against a member. Additionally, Commer stated that Plaintiff's October suspension and termination were a result of charges being brought against him.

Defendants argue that charges were not brought against Plaintiff at any time. They contend that the AFSCME Constitution requires that charges be brought in a certain manner, and those requirements were not met in the October 5 memo. Defendants also underscore that the October 5 memo does not explicitly mention charges being brought. In response to Commer's testimony that charges were being brought against Plaintiff, Defendants cite to Silverman's response that the disciplinary actions against Plaintiff were not taken in accord with the Constitution. Silverman supports her testimony with the fact that no reference to charges or the relevant section of the AFSCME Constitution were mentioned at the meeting where Plaintiff was suspended. Defendants also argue that Commer was terminated six days prior to Plaintiff's termination and, therefore, has no authority to testify as to whether Plaintiff's termination was the result of charges being brought against him. While Mr. Commer did write to the President of the AFSCME indicating that Plaintiff was suspended pursuant to the Constitution, Silverman suspects that Commer did it to muddy the waters because Commer was close with Plaintiff. Also, according to Silverman, after a hearing by a person appointed by the AFSCME President, it was determined that the Executive Board had not proceeded under the AFSCME Constitution. Further, at the time of Plaintiff's termination, the minutes of the meeting reflect that a motion was made indicating that Commer's letter to the President was in defiance of the order of the Executive Board.

The Court finds that the conflicting statements of Dawes, Commer and Silverman do present issues of material fact as to whether charges were filed against Plaintiff. Because this issue is central to the resolution of this case and because credibility judgments are inappropriate at the summary judgment stage, the Court concludes that neither the Plaintiff nor Defendants have met their respective burdens in establishing, as a matter of fact, that charges were or were not filed against Plaintiff. As such, the motions for summary judgment as to Defendants' alleged issuance of charges against Plaintiff in the October suspension and November termination are denied without prejudice.

In sum, Plaintiff's claims arising from the January and March suspensions are dismissed and only the claims arising from the October suspension and November termination remain.

**C.     Whether AFSCME and DC 37 are Responsible for Plaintiff's Termination**

Defendants also move for summary judgment on Plaintiff's claims against AFSCME and DC 37, arguing that neither had sufficient involvement in Plaintiff's termination to justify an imposition of liability. In support of Plaintiff's claim against DC 37, Plaintiff alleged threats made by Smith, a DC 37 employee, eleven months prior to Plaintiff's termination. Plaintiff also claims that DC 37 processed his sick leave in 1998 and therefore was responsible for his termination.

With respect to AFSCME, Plaintiff claims that AFSCME had a duty to consider Commer's testimony that Plaintiff was charged and terminated under the Constitution when investigating Plaintiff's termination. Plaintiff contends that AFSCME's failure to do so was tantamount to AFSCME disregarding its own Constitution and thereby denying Plaintiff the procedural rights guaranteed therein. Further, Plaintiff alleges that AFSCME personnel engaged in retaliatory acts against Plaintiff from April 1998 through his termination.

Although there is evidence that the AFSCME did investigate the "charges" and apparently

determined that "charges" were not in fact brought, the record is not clear as to what evidence was considered in making this determination. The level of AFSCME's responsibility for Plaintiff's termination will depend on the resolution of whether Plaintiff's suspension in October and termination were the result of charges brought pursuant to the AFSCME Constitution. If that question is answered in the affirmative, a duty may have arisen for the AFSCME to further investigate the suspension and termination, and a failure to properly investigate could give rise to their liability for Plaintiff's dismissal. However, as discussed above, there are fact-based contentions that prevent resolution of this issue at the summary judgment stage. Therefore, Plaintiff's motion for summary judgment as to the AFSCME's responsibility for Plaintiff's termination is denied without prejudice.[2]

As for DC 37, the fact that Plaintiff was paid through DC 37, that DC 37 processed Plaintiff's sick leave and gave him an identification card, and that certain DC 37 leaders allegedly threatened Plaintiff with termination create issues of material fact as to whether DC 37 jointly employed Plaintiff and/or had input into Plaintiff's termination. As such, the Court concludes that Plaintiff has raised issues of material fact as to the role of DC 37 in Plaintiff's termination. Accordingly, Defendants' motion for summary judgment as to DC 37 and AFSCME is denied.

## CONCLUSION

For the reasons set forth above, it is on this 7th day of September, 2006, it is

**ORDERED** that Defendants' motion for summary judgment [Docket Entry # 14] is

---

[2]Plaintiff's claim that he was employed by AFSCME is unsupported by evidence in the record, as the crux of Plaintiff's claim is that his employment with AFSCME arose out of the two organizations' association with each other.

GRANTED as to Defendants' interpretation of the two Constitutions as set forth herein and as to the dismissal of the claim that charges were brought for Plaintiff's January and March suspensions, and DENIED as to the remaining issues; and it is further

**ORDERED** that Plaintiff's motion for summary judgment [Docket Entry # 12] is DENIED; and it is further

**ORDERED** that the parties shall contact my Deputy Clerk, Lissette Rodriguez, to schedule a trial date for this matter.[3]

        /s/ Jose L. Linares
        JOSE L. LINARES,
        UNITED STATES DISTRICT JUDGE

---

[3] In November of 2005, the Final Pretrial Order was entered, thus this matter is ready for trial.